THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* MICHAEL F. MORAN *et al.,* Defendants-Appellants.

(No. 56147;

First District (2nd Division)—February 5, 1974.

James N. Vail, of Chicago, for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Thomas J. Cachor, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

In an endeavor to establish the status of the title to a two-story frame building at 6639 South Normal Boulevard, Chicago, Illinois, for the purpose of filing complaints against the interest holders in respect of violations of building ordinance of the City of Chicago, the City's Department of Buildings on 8 November 1968 initiated a title and tax search of the subject property. The said search was completed on 12 November 1968. The title search disclosed that the owners were Michael F. Moran and Walter Pittel (and his wife Elizabeth), and the tax search showed that, for the tax years 1967 through 1969, the property had been assessed in the name of Walter Pittel, whose residence address was listed as 1516 W. Schreiber Avenue in Chicago. In the oral argument, it was stated by the City and not denied that the said taxes had been paid by Walter Pittel from the Schreiber Avenue address, which had been the correct residential address of Walter Pittel in certain years prior to 1967 but which had never been the correct residential address of Michael F. Moran.

The Division of Inspectional Services of the City's Department of Buildings, through Inspector Frank Truesdale, then made later inspections of the subject property on 17 December 1968 and on 8 January 1969. In a report filed 15 January 1969, Inspector Truesdale listed about 15 ordinance violations.

Under date of 16 January 1969, Charles J. Schoper, Assistant Chief Plumbing Inspector for the Department of Buildings, mailed a notice of certain plumbing defects in the South Normal Boulevard building (which constituted ordinance violations) to "Mike Moran, 3831 N. Lincoln Avenue, Chicago, Illinois 60657", which was the correct then current residential address of defendant Michael F. Moran.

Under date of 29 January 1969, Sidney D. Smith, Commissioner of Buildings and head of the City's Department of Buildings, mailed a letter to "Mr. Mike Moran, 3831 N. Lincoln Ave., Chgo., Ill.", informing Mr. Moran that an enclosed list contained 16 violations of the Municipal Code of Chicago, which had been noted in a recent inspection of the premises at 6639 S. Normal Boulevard. Mr. Moran was requested to return an affidavit as to what he had done or was doing about correcting the said violations by 6 February 1969. Meanwhile, Commissioner Smith offered the cooperation of the Department to Mr. Moran and instructed him to call "Mr. Truesdale 744-3442" for further information. The said list was in fact enclosed. The address used was again the correct then current residential address of defendant Michael F. Moran. Every transaction so far noted originated in the City's Department of Buildings.

On 10 February 1969, the City through its Law Department filed a complaint in the Circuit Court of Cook County seeking a fine of $2800 and other relief against Michael F. Moran and Walter Pittel, *et al.*

Count I of the complaint prayed for a fine in the amount of $2800 for 14 listed ordinance violations at the Normal Boulevard premises, of which defendants were alleged to have been notified, but which had allegedly not been corrected. Paragraph 3 of Count I, setting out the list of violations, appears to be the verbatim list prepared by Inspector Frank Truesdale from the inspection of 8 January 1969 and filed with the Department of Buildings on 15 January 1969. Below the list of violations and still within Paragraph 3 appear the names, *inter alia*, of Michael F. Moran and Walter Pittel with the address for *each* "1516 W. Schreiber". There also appears "Court date March 3, 1969, Room # 1406, Time 2:00 P.M."

Count II of the said complaint prays for injunctive relief against defendants to require them to correct the said violations and to restrain future violations, and for the appointment of a receiver, if necessary, to correct the said conditions, and for an order that the City demolish the building on the said premises and for judgment against defendants and a lien on the property in the amount of the cost of the demolition, as authorized by Ill. Rev. Stat. 1967, ch. 24, par. 11—31—1.

Under date of 16 January 1969, the complaint was verified by Commissioner of Buildings Sidney D. Smith as the duly authorized agent of the City for the purpose of making the said affidavit.

On 10 February 1969, a summons was issued, directed to Michael F. Moran and to Walter Pittel, each at the address "1516 W. Schreiber", requiring them to appear on 3 March 1969. Each summons was returned "not found".

On 29 May 1969, alias *summons* issued as to each defendant at the

same Schreiber Avenue address. Each alias summons was returned "not found deft. has moved".

On 2 June 1969, the Assistant Corporation Counsel handling the proceeding filed his affidavit for service by publication, in which he alleged that Michael F. Moran and Walter Pittel "on due inquiry cannot be found" and that "upon diligent inquiry" defendants' place of residence cannot be ascertained and that the last known place of residence for *each* defendant is "1516 West Schreiber". Publication was duly had and the notice thereof duly mailed to each defendant at "1516 W. Schreiber, Chicago, Ill.".

On 25 June 1969, the Assistant Corporation Counsel moved to default the defendants and to set a hearing date for 21 July 1969. The motion was allowed.

On 25 July 1969, the trial court entered its decree of demolition. It expressly found that it had jurisdiction of the parties and of the subject matter, and that the building involved was dangerous and in an unsafe condition. The court decreed demolition, that the demolition costs be charged against defendant, that the matter be continued to 24 October 1969 for the purpose of ascertaining the demolition costs and of entering a money judgment therefor, and that the City was thereby authorized to attach a demolition lien against the property for the reimbursement of its demolition costs.

On 28 April 1969, a receiver had been appointed for the subject property, and the receiver was discharged on 4 December 1969. In January, 1970, the final report of the receiver, showing no income but expenses of $115 and fees of $195 for a total charge of $310, was approved, and defendants were ordered to pay that amount to the receiver.

On 24 February 1970, defendants filed the instant section 72 petition to vacate the order of demolition. They alleged that they had first learned of the demolition of the building on 23 January 1970 and of the City's complaint and proceedings against them on 28 January 1970, and that they had a meritorious defense to the complaint and had exercised due diligence in presenting *that defense* to the court by means of the instant petition. In addition, a counterclaim against the City seeking damages in the amount of $20,000 arising as a result of the alleged wrongful demolition of the building on defendants' property accompanied the petition to vacate the order of demolition.

We summarize the gist of the grounds for their petition: all summonses and notices had been mailed to them at a residence address at which the City knew they did not then reside; the very City Department which filed the complaint on 10 February 1969, through the City's Law Depart-

ment, had sent two letters in the latter half of January, 1969, to defendant Michael F. Moran at his then current correct residence address listing the very ordinance violations upon which the complaint was based, and both letters had so been sent two months *after* the Building Department's title and tax search had turned up the incorrect Schreiber Street address actually used to process the complaint; that the correct then current resident address of the other defendant Walter Pittel had at all material times been listed (as, for that matter, had defendant Michael F. Moran's correct then current residence address) in the Chicago Telephone Directory, in which only one person named Walter Pittel (and, for that matter, only one person named Michael F. Moran) was so listed; that these facts demonstrate that the City's statutorily required allegations in the affidavit for service by publication of "due inquiry" and "diligent search" were false in fact; and that the falsity destroyed what would otherwise have been both the jurisdiction of the court over their persons and the in rem jurisdiction of the court over their subject property.

On 23 October 1970, the City responded with a motion to strike and dismiss the section 72 petition to vacate the order of demolition, and to strike the counterclaim. The gist of the City's motion was that the defendants' petition did not show a lack of jurisdiction by the trial court of the subject matter, or of the persons of the defendants, and further that defendants' petition did not contain sufficient allegations of fact from which the conclusion of fraud on the part of the City in failing to establish the correct addesses of defendants necessarily resulted. The City also alleged that the tax and title search of its Department of Buildings was sufficient to constitute due and diligent inquiry and that, since defendants could not be found at the addresses so discovered, service by publication was proper.

On 28 January 1971, the trial judge entered an order denying the petition to vacate the order of demolition and granting the City's motion to strike and dismiss the said section 72 petition. But, it was further ordered that the order of 28 April appointing a receiver be vacated, because the trial court did not have personal jursdiction over the defendants. In addition, the petition for receiver's fees, costs, and expenses was denied. Finally, defendants' counterclaim was dismissed with prejudice and the City was ordered to be entitled to a lien on defendants' property in the amount of the costs for demolishing the building which had been on the property.

On 24 February 1971, defendant moved to vacate the order of 28 January 1971 on the ground that the trial court lacked jurisdiction over

defendants and their property. That motion was denied on 2 April 1971.

Defendants appeal from the order of demolition of 25 July 1969; from the order of 28 January 1971 denying their petition to vacate the order of demolition and dismissing their counterclaim; and from the order of 2 April 1971 denying the motion to vacate the order of 28 January 1971 denying their motion to vacate the said order of demolition and dismissing their counterclaim.

*OPINION*

The sole issue on this appeal is whether the Department of Buildings' tax and title search to establish the whereabouts of defendants satisfied the due and diligent inquiry and search requirements of Ill. Rev. Stat. 1969, ch. 110, par. 14, and Ill. Rev. Stat. 1969, ch. 24, par. 11—31—1, thereby entitling the City to use substituted service to obtain in rem jurisdiction over defendants' property when personal service could not be had on defendants at the addresses discovered by the Department's tax and title search. It is our opinion that under the circumstances of this case the City failed to make due and diligent inquiry into the whereabouts of defendants.

■■ The provision for due inquiry is not intended as a pro forma or ritual phrase, requiring only perfunctory performance, but, on the contrary, requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit. (*City of Chicago v. Leakas* (1972), 6 Ill.App.3d 20, 284 N.E.2d 449; *Graham v. O'Connor* (1932), 350 Ill. 36, 182 N.E. 764; *Romain v. Lambros* (1956), 12 Ill.App.2d 64, 138 N.E.2d 704.) Where an affidavit alleging that "on due inquiry, defendant cannot be found" does not speak the whole truth, such a faulty affidavit fails to confer jurisdiction on the trial court over the property in question, and the demolition decree is therefore void. See *City of Chicago v. Leakas, supra.*

■■ In the case before us, it has been shown that the City Building Department, the very department which discovered the alleged violations of the building ordinances which resulted in the subsequent demolition of the building, was in possession of the correct current residential address of one of the owners of the property in question at a time two months after the tax and title search, and had used that address to send two notices of violations to Mr. Moran. For whatever reason, the City through its Law Department ignored this information and instead relied on the earlier Building Department tax and title search to establish the addresses of defendants. This neglect or inadvertence, coupled with the fact that the correct addresses of all defendants could have been easily ascertained by merely consulting the then current Chicago telephone

directory,[1] leads us to the conclusion that due and diligent inquiry as to the whereabouts of the defendants had not in fact been made by the City in this case. Therefore, the affidavit of the City that there had been due inquiry as to the whereabouts of defendants did not speak the whole truth. Owing to the faulty affidavit, the trial court lacked in rem jurisdiction to enter the order of demolition and to give the City a lien on the property of defendants. Therefore, the order of demolition is void, and, consequently, it was error to dismiss defendants' counterclaim.

For the foregoing reasons we vacate the order of demolition, reverse the dismissal of defendants' counterclaim and reinstate it, and remand the cause for such further proceedings on defendants' counterclaim as may be had.

Reversed and remanded.

STAMOS and LEIGHTON, JJ., concur.

---

[1] We are aware of *Zeve v. Levy* (1967), 37 Ill.2d 404, 226 N.E.2d 620, and *In re Application of County Treasurer* (1967), 84 Ill.App.2d 456, 228 N.E.2d 269 where it was held that the failure of petitioners for tax deeds to find the addresses of the owners of the property in telephone books (one Chicago and one suburban) did not entitle the owners to have the deeds set aside. Aside from the fact that, unlike the instant case, the two cited cases are tax deeds cases, neither case involved the situation before us in that each case involved a private party who at no time had other reason to be aware of the correct address of the owner.