REGINALD HUDLIN *et al.*, Plaintiffs-Appellees, v. THE CITY OF EAST ST. LOUIS, Defendant-Appellant.

Fifth District   No. 5—91—0144

Opinion filed May 4, 1992.—Rehearing denied May 21, 1992.

Edward L. Welch, of Edwardsville, for appellant.

Brian A. Babka, of Chatham & Babka, of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Defendant, City of East St. Louis, appeals from the September 14, 1989, order of the circuit court of St. Clair County granting the motion for summary judgment on the issue of liability filed by plaintiffs, Reginald Hudlin and Gerald Hudlin. Defendant also indicates in its notice of appeal that it is appealing from the denial of its motion to dismiss; however, this issue was not discussed by defendant in its brief or argument to this court, and so we will not address it on appeal. Defendant further appeals from the November 8, 1990, judgment of the circuit court in favor of plaintiffs, following bench trial on the issue of damages, in the amount of $189,360. The circuit court denied defendant's post-trial motion to reconsider on February 11, 1991.

We initially note that the instant case is a consolidation of two St. Clair County circuit court cases, No. 83—L—512 and No. 85—L—606. The causes were consolidated on September 6, 1989, on motion of plaintiffs that the cases involved the same parties and identical issues, the taking of property owned by section 11—31—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1). This section of the Illinois Municipal Code provides in pertinent part:

> "The corporate authorities of each municipality may demolish, repair or cause the demolition or repair of dangerous and unsafe buildings *** within the territory of any such municipality ***. *** The corporate authorities shall apply to the circuit court of the county in which such building is located for an order authorizing such action to be taken with respect to any such building if the owner or owners thereof, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put such building in a safe condition or to demolish it. *** Where, upon diligent search, the identity or whereabouts of the owner or owners of any such building including the lien holders of record is not ascertainable, notice mailed to the person or persons in whose name such real estate was last assessed is sufficient notice under this Section." Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1.

Cause No. 83—L—512 involved real property, allegedly owned by plaintiffs, located at 2041-2043 Bond Avenue in East St. Louis, Illinois. Plaintiffs alleged therein that defendant failed to give them the notice required under the statute prior to the demolition of their property on May 24, 1983, and that they were damaged in excess of

$15,000. Cause No. 85—L—606 involved real property allegedly owned by plaintiffs located at lot 11, in block 124, of "Denverside," referencing the plat recorded in the recorder of deeds office for St. Clair County, Illinois, in book "F," pages 39 and 40. The address for this property was 1322 Trendley Avenue, East St. Louis, Illinois. Plaintiffs also alleged that defendant failed to give them the notice required under the statute prior to the demolition of this property on June 7, 1985. Plaintiffs prayed for damages in excess of $15,000. In cause No. 83—L—512, Target 2000 Metro-East Associates and St. Clair County, Illinois, were joined as defendants. These defendants were dismissed from the case prior to trial.

Defendant filed a motion for summary judgment in cause No. 83—L—512 on January 26, 1984. In said motion defendant stated that in order to obtain an order of demolition, the demolition statute (Ill. Rev. Stat. 1983, ch. 24, par. 11—31—1) requires application to the circuit court for an order to demolish structures and clearance of land, provided notice of the proposed application is given to the owners of the real estate. Defendant further stated that plaintiffs did not reside at the real estate located at 2041-2043 Bond Avenue and that the statute allows for notices to be mailed to the person or persons in whose name such real estate was last assessed, provided the identity of the owners is not otherwise ascertainable upon diligent search. Defendant noted that Illinois law defines a diligent search as being a title search conducted to determine ownership of the affected real estate, citing *City of Chicago v. General Realty Corp.* (1971), 133 Ill. App. 2d 662, 273 N.E.2d 712. Defendant stated that it obtained a preliminary report of title through the Lawyers' Title Insurance Company which showed that the real estate tax bill for the property in question was to be sent to "Hudlin & Company, 602 First Illinois Bank Building, East St. Louis, Illinois, 62201." Defendant attached a copy of the title report to the motion. Defendant also attached in support of its motion the affidavit of Janet F. Bovay in which the affiant stated that on March 18, 1983, she forwarded to the owner of the real estate via United States mail the statutory notice of the City of East St. Louis addressed to 602 First Illinois Bank Building, East St. Louis, Illinois, 62201. Finally, in support of its motion, defendant attached a copy of the notice to plaintiffs.

In their response to defendant's motion for summary judgment, filed April 6, 1984, plaintiffs stated that the deed to the property located at 2041-2043 Bond Avenue listed the names of plaintiffs as well as their respective addresses and said deed was recorded at the St. Clair County recorder of deeds office on September 4, 1981. Plaintiffs

further stated that the notice to be given under section 11—31—1 of the Illinois Municipal Code only allows for the notice to be mailed to the person in whose name the real estate was last assessed when a "diligent search" did not reveal the owners. Plaintiffs cited *City of Chicago v. Moran* (1974), 17 Ill. App. 3d 515, 308 N.E.2d 324, for the proposition that the inquiry needs to be more than a perfunctory performance and "requires an honest and well-directed effort to ascertain the whereabouts of [the owner] by an inquiry as full as circumstances permit." (*Moran*, 17 Ill. App. 3d at 520, 308 N.E.2d at 328.) Plaintiffs further stated in their affidavit in support of their response to defendant's motion that they had never received any notice of any proceedings in respect to any actions taken on the property. Defendant's motion for summary judgment in cause No. 83—L—512 was denied by the circuit court on July 9, 1984.

Plaintiffs filed a motion for summary judgment in cause No. 83—L—512 on December 24, 1985. In support of their motion, plaintiffs attached as exhibit D the discovery deposition of Janet Bovay, which deposition had been taken by plaintiffs in cause No. 83—L—512 on June 4, 1985. Plaintiffs stated in their motion that in Ms. Bovay's deposition she testified that she was employed by the legal counsel for the City of East St. Louis and that her job responsibility was to run the "demolition file." Ms. Bovay testified that among her duties in this capacity, she mailed out notices on all demolition projects for the City of East St. Louis. She further testified, plaintiffs stated, that at no time did she ever mail notice to the legal owner of properties subject to demolition, but rather she sent all notices directly to the last taxpayer of record. Plaintiffs cited exhibit C, pages 10, 11, and 12 with regard to the name and address of the last taxpayer of record for the subject property. Plaintiffs also attached as exhibit A to the motion a copy of their deed to the subject property, acquired on December 11, 1980. Plaintiffs stated that, on its face, the deed showed the address of plaintiff Gerald Hudlin as 705 Alhambra, East St. Louis, Illinois, 62205, and the address of plaintiff Reginald A. Hudlin as 3136 Virginia Place, East St. Louis, Illinois, 62207. Plaintiffs also stated that the deed was recorded on September 4, 1981, with the St. Clair County recorder. Plaintiffs contended that there was no genuine question as to any material fact that defendant did not undertake a diligent search in order to ascertain the whereabouts of the owners of the subject property, citing *City of Moran* (1974), 17 Ill. App. 3d 515, 308 N.E.2d 324. Plaintiffs prayed for judgment as a matter of law against defendant, City of East St. Louis.

Defendant served interrogatories pursuant to Supreme Court Rule 213 (134 Ill. 2d R. 213) on plaintiffs in cause No. 83—L—512, a copy of which was filed with the court on January 2, 1986. These interrogatories asked plaintiffs, *inter alia*, to:

> "[s]tate whether Gerald D. Hudlin and Reginald A. Hudlin had an interest as shareholder, director or officer of Hudlin and Company on March 18, 1983 and if so state the interest of either party.

> \* \* \*

> State whether Gerald D. Hudlin, Reginald A. Hudlin or any representative of Hudlin and Company received a notice of hearing to enter order for summary demolition, a copy of which is attached hereto, on or about March 18, 1983 and if so state the name of the party receiving said notice and the date received."

The record does not indicate whether plaintiffs ever served answers to these interrogatories on defendant.

The circuit court heard plaintiffs' motion for summary judgment in cause No. 83—L—512 on January 17, 1986, ordering the parties to submit authority within 14 days. Plaintiffs submitted the affidavits of Gerald D. Hudlin and Reginald A. Hudlin on January 21, 1986. In each affidavit the affiant stated that no notice of demolition or repair had been received at his residence as indicated in the deed and, if it had been received, appropriate steps would have been taken. Plaintiffs also submitted a copy of *City of Chicago v. Moran* in support of their argument that, because plaintiffs' addresses were readily available from the recorded deed to the subject property, defendant did not meet the statutory requirement of a diligent search which would have authorized sending of the notices to the address where tax bills were sent.

On January 24, 1986, defendant submitted a memorandum of authority and written argument in opposition to plaintiffs' motion for summary judgment. Therein defendant argued that the deed to the property in question indicated that plaintiffs did not reside in the premises in question and that they were accepting real estate tax bills in the name of "Hudlin and Company," at the address to which the defendant's demolition notice was sent. Defendant argued that, from all appearances, plaintiffs were using Hudlin and Company at Room 602, First Illinois Bank Building, East St. Louis, Illinois, as their representative or agent as to matters involving the property in question. Therefore, defendant argued, plaintiffs should not be allowed to argue that notice sent to Hudlin and Company at this address was not sufficient notice, especially since defendant made a diligent search by ob-

taining a preliminary report of title and using the address contained therein, to which the real estate tax bills for this property were being sent, as the address for the statutory notice, citing *City of Chicago v. General Realty Corp.* Defendant prayed that plaintiffs' motion for summary judgment be dismissed because there was an apparent question of fact as to the relationship between Hudlin and Company and the plaintiffs in this cause. The circuit court denied plaintiffs' motion for summary judgment in cause No. 83—L—512 on February 18, 1986. Plaintiffs filed a motion to reconsider on February 27, 1986, which was denied by the circuit court on May 2, 1986.

The record indicates that defendant also served interrogatories on plaintiffs pursuant to Supreme Court Rule 213 (134 Ill. 2d R. 213), on or about April 16, 1986, in cause No. 85—L—606. These interrogatories asked plaintiffs, *inter alia*, to:

> "state whether plaintiff ever owned or had interest in Hudlin and Company either as a shareholder, director, officer, partner, sole proprietor, or was an employee and if so state:
> A. In what capacity
> B. During what period of time."

At pretrial conference on August 4, 1987, in cause No. 85—L—606, the circuit court ordered plaintiffs to file their answers to defendant's discovery in 28 days. The record does not indicate whether plaintiffs ever complied with this order, nor does the record indicate that defendant ever brought a motion to compel or for sanctions for plaintiffs' failure to comply with the August 4, 1987, order.

The original attorneys of record for defendant filed a motion to withdraw in cause Nos. 83—L—512 and 85—L—606 on November 14, 1988, because of the termination of their litigation agreement with the City of East St. Louis. The motion was allowed and the law firm of Vickers, Moore & Wiest entered their appearance on behalf of defendant in both causes on December 5, 1988.

Plaintiffs filed a second motion for summary judgment in cause No. 83—L—512 on July 7, 1989. In this motion plaintiffs stated that they were residents of the City of East St. Louis, that they were the legal owners of the subject property alleged in the complaint to have been demolished by defendant and that they had acquired said property by quitclaim deed on December 11, 1980. Plaintiffs attached a copy of the quitclaim deed to the motion filed in cause No. 83—L—512. Plaintiffs also stated in the motion that the quitclaim deed listed their respective addresses and that this deed was recorded on September 4, 1981, with the St. Clair County recorder. Plaintiffs also claimed, by way of a copy of the notice of demolition sent on March

18, 1983, and a copy of defendant's answers to interrogatories, that the statutory notice for demolition and condemnation was sent for the subject property. Plaintiffs contended that section 11–31–1 of the Illinois Municipal Code required that said notice be sent to owners of the property subject to demolition but when the owners could not be located, then notice can be mailed to the person or persons in whose name the real estate was last assessed. Plaintiffs contended that at no time could they not be located at the addresses listed on the deed and that at no time did they receive notice of demolition as required by the statute. Plaintiffs attached the discovery deposition testimony of Janet Bovay to their motion and stated that as employee of the legal counsel for the City of East St. Louis, her job was to run the "demolition file." Plaintiffs cited Ms. Bovay's deposition testimony that her duties included mailing out notices on all demolition projects for the city and that at no time did she ever mail notice to the legal owner of the properties subject to demolition but rather all notices went directly to the last taxpayer of record. Plaintiffs concluded that there was no genuine issue of material fact that defendant failed to make a diligent search in order to ascertain the whereabouts of the owners of the property, citing *City of Chicago v. Moran*.

Plaintiffs also filed a motion for summary judgment in cause No. 85–L–606 on July 20, 1989. Plaintiffs stated therein that they were residents of the City of East St. Louis and that they were on June 7, 1985, legal owners of the property alleged in their complaint to have been demolished by defendant without the giving of the statutory notice. Plaintiffs stated that under the statute, notice of demolition should have been sent by defendant to the owners of the property subject to demolition or repair. Plaintiffs also stated that at no time could plaintiffs not be located at the address listed on the aforementioned property and that at no time had they received notice of demolition. Plaintiffs also attached the deposition testimony of Janet Bovay in which she testified that at no time did she ever mail notice to the legal owner of the property subject to demolition but rather all notices went directly to the last taxpayer of record. Plaintiffs concluded that defendant failed to make a diligent search in order to ascertain the whereabouts of the owners of the property, citing *City of Chicago v. Moran*.

The record indicates that plaintiffs' July 7, 1989, motion for summary judgment in cause No. 83–L–512 was heard on August 23, 1989. As noted above, the causes were consolidated by order of the circuit court on September 6, 1989. The circuit court noted in its September 14, 1989, order granting plaintiffs' motions for summary judg-

ment on the issue of liability that the motion for summary judgment filed in cause No. 85—L—606 contained identical legal issues to those contained in the motion for summary judgment in cause No. 83—L—512, upon which it had heard legal argument. In ruling on plaintiffs' motion for summary judgment on September 14, 1989, the court adopted as findings of fact each of the allegations stated in the motion for summary judgment filed on July 7, 1989, and each of the allegations stated in the motion for summary judgment filed on July 20, 1989. Based on these findings of fact, the court granted summary judgment on the issue of defendant's liability for negligence.

The sole function of the court reviewing the trial court's entry of summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005) is to determine whether the lower court correctly ruled that no genuine issue of fact had been raised and, if none was raised, whether judgment was correctly entered as a matter of law. (*Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 923, 568 N.E.2d 503, 505.) Section 2—1005 of the Code of Civil Procedure provides in pertinent part:

> "If the court determines that there is no genuine issue of material fact as to one or more of the major issues in the case, but that substantial controversy exists with respect to other major issues, or if a party moves for a summary determination of one or more, but less than all, of the major issues in the case, and the court finds that there is no genuine issue of material fact as to that issue or those issues, the court shall thereupon draw an order specifying the major issue or issues that appear without substantial controversy, and directing such further proceedings upon the the remaining undetermined issues as are just. Upon the trial of the case, the facts so specified shall be deemed established, and the trial shall be conducted accordingly." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(d).)

This rule further provides that the judgment sought shall be rendered without delay if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) As noted above, summary judgment was entered on the issue of liability. The legal theory of plaintiffs' complaints was damage to property caused by defendant's negligent failure to give the demolition notice required under the statute.

■ Section 11—31—1 of the Illinois Municipal Code plainly provides that no municipality is entitled to an order for demolition unless

it first serves notice of the demolition hearing on the owner and allows the owner 15 days in which to put the building in safe condition or to demolish it. There is therefore no question that defendant had a duty under the statute to give notice to plaintiffs; the issue of law involved in plaintiffs' motions for summary judgment is whether under the statute defendant had a duty to send the demolition notice to plaintiffs' residences rather than the address of the last taxpayer of record. It is undisputed that notice was sent to the name and address of the last taxpayer of record rather than to plaintiffs at the addresses listed on the deed, which plaintiffs contended were their residences at the time of demolition of the subject properties, and this point, too, was uncontroverted by defendant. Section 11—31—1 of the Illinois Municipal Code also plainly provides that if the identity or whereabouts of the owner of the property proposed for demolition is not ascertainable after diligent search, notice mailed to the person in whose name such real estate was last assessed is sufficient notice. A secondary issue of law involved in plaintiffs' motions for summary judgment is thus whether defendant made a "diligent search" for the whereabouts of the owners of the subject property.

Defendant contends that a title search conducted by the city constitutes a "diligent search" within the meaning of the statute, citing *City of Chicago v. General Realty Corp.* (1971), 133 Ill. App. 2d 662, 668, 273 N.E.2d 712, 716. In *General Realty* the city had conducted a title search which revealed that General Realty, Chicago Title & Trust and Al Abraham were the owners. The title search showed that taxes were last paid by General Realty but that the tax bills went to Al Abraham. The city served Chicago Title & Trust with notice of the demolition hearing but could not locate either General Realty or Al Abraham. General Realty had sold its interest in the property to the First National Bank of Blue Island, which held the title in a land trust for an unnamed beneficiary. These later transactions were not of record at the time the demolition hearing was held. The court held that under the circumstances of that case the title search conducted was a diligent search and that it was not the fault of the city that the proper parties could not be found. In that particular case the court also found that the owners were not prejudiced because on the date of the demolition hearing a receiver had been appointed but the demolition order was not entered until some six months later when all owners and mortgagees, including those not of record when the city originally sent out its notices, had entered their appearances in the proceedings.

In contrast, Janet Bovay's deposition in the instant case indicates that her procedure with regard to the demolition cases was to order a preliminary title report together with the last taxpayer of record and current address. She noted that the owner was usually listed on the first page of the title report and the last taxpayer of record was somewhere else in the title report. She very clearly testified that her instructions were to send the demolition notice to the last taxpayer of record, even if the owner and last taxpayer of record were different persons.

In *City of Chicago v. Moran* (1974), 17 Ill. App. 3d 515, 308 N.E.2d 324, upon which plaintiffs rely for their entitlement to judgment as a matter of law, the court held that a tax and title search initiated by the city was not a diligent search under the circumstances of that case. In *Moran*, the title search revealed that the owners of the property were Michael Moran and Walter Pittel, and the tax search showed that the property had been assessed in the name of Pittel, whose residence was listed as 1516 W. Schreiber Avenue in Chicago, although at that time Pittel had a different address. Pittel's address had never been the address of Michael Moran; however, the summons and alias summons in a suit filed by the city against Moran and Pittel, for housing code violations and containing a prayer for the entry of an order of demolition, listed the address for service of Moran and Pittel at 1516 W. Schreiber Avenue in Chicago. The city sought to serve Moran and Pittel by publication and in its affidavit stated that on due inquiry defendants could not be found, upon diligent inquiry defendants' places of residence could not be ascertained and that the last known place of residence for each defendant was 1516 West Schreiber, Chicago, Illinois. On review, the court addressed the limited issue of whether the city was entitled to obtain *in rem* jurisdiction over defendants' property when personal service could not be had on defendants at the addresses discovered by the tax and title search. The court noted that the city building department had previously sent notice of ordinance violations to Moran's correct, current residential address and that the correct addresses of both defendants could have been easily ascertained by merely consulting the then-current Chicago telephone directory. The court vacated the order of demolition.

■ While defendant in the instant case caused a search to be performed prior to the mailing of the demolition notices, it cannot be said that the identities and whereabouts of the owners of the subject properties were not ascertainable. Indeed, the preliminary reports of title ordered by defendant showed the names of the owners and the

location of the recording of the deeds to the properties at the St. Clair County recorder of deed's office. Therefore, we hold that the circuit court's finding that defendant did not undertake a diligent search to ascertain the whereabouts of the owners of the property was supported by the pleadings, depositions, admissions and affidavits on file, and so there was no genuine issue of material fact as to this point. Accordingly, defendant's notice sent to the last taxpayer of record was not sufficient notice under the statute.

Defendant argues, however, that the September 6, 1989, order for summary judgment on the issue of liability was improperly granted because plaintiffs' causes of action, sounding in tort, necessarily had to prove both negligence and injury in order to prove defendant's liability, citing *Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 315 N.E.2d 215. Defendant contends that assuming the City of East St. Louis had a duty to serve plaintiffs at their addresses shown on the deed rather than at the address shown for the sending of tax bills, that fact alone did not add to plaintiffs' injury, for if the notice had been received, plaintiffs would have had to expend large sums of money to repair derelict buildings on which defendant contends they had been unwilling to pay the real estate taxes. Thus, defendant concludes, a factual dispute existed with regard to whether the alleged negligence on the part of defendant caused their injury or whether the plaintiffs' gross neglect of their buildings caused their injury.

■ In order to prove liability on the part of defendant for negligence, plaintiffs would have to prove not only duty and breach of duty on the part of defendant but also that this breach of duty was the proximate cause of their damages. Plaintiffs alleged in their complaints in the two causes that failure to give the notice required under the statute was the proximate cause of defendant's destruction of their properties. It is undisputed that the subject properties were demolished by defendant on or about the dates stated in the respective complaints. Plaintiffs argue, however, that defendant is attempting to create a factual dispute by raising for the first time on appeal the alleged issue of whether the negligence of the city caused plaintiffs any injury. In our review of the various motions for summary judgment filed by plaintiffs and defendant in the two cases, as well as the memoranda in support of, and in opposition to, the motions for summary judgment, we could find no argument concerning causation. We are also unable to determine whether this issue was argued at the August 23, 1989, hearing on plaintiffs' motion for summary judgment because no report of proceedings for this hearing was filed with the record on appeal. Appellant has the duty to present the reviewing court with a

complete record on appeal; any doubts arising from the incomplete record are therefore resolved against the appellant, and those issues which depend for resolution upon facts not in the record mandate affirmance. (*U.S. Minerals & Mining, Inc. v. Licensed Processors, Ltd.* (1990), 194 Ill. App. 3d 428, 434, 551 N.E.2d 661, 665.) We would also note that an allegation that plaintiffs were not injured, because if they had received notice of the demolition they would have been forced to expend large sums of money to repair worthless property, should have been raised as an affirmative defense of contributory negligence in order to have been an issue in this case. No such defense was pled by defendant in either cause No. 83—L—512 or cause No. 85—L—606. Accordingly, there was no genuine issue of material fact as to this point properly before the circuit court when it ruled on plaintiffs' motion for summary judgment.

■ Defendant further contends that an issue of fact existed as to whether plaintiffs had actually received notice of the demolition hearing which was sent to "Hudlin and Company." Defendant contends that the interrogatories propounded to plaintiffs concerning Hudlin and Company, the answers to which are not a part of the record, evinced the existence of this issue of fact. Defendant argues that an inference could have been drawn that the owners in fact had received the demolition hearing notice from an answer to its interrogatories and that the judge who had denied plaintiffs' motion for summary judgment in cause No. 83—L—512 on February 18, 1986, had obviously recognized the implications of the answers to the above question. Defendant also notes that the record includes (as an attachment to defendant St. Clair County's response to plaintiffs' request for production) the notice of injury served on the county prior to the filing of suit by plaintiffs in cause No. 83—L—512. This notice lists the name and residence of the person injured as Gerald D. Hudlin and Reginald A. Hudlin, c/o Hudlin Plaza, 601 East Broadway, East St. Louis, Illinois. Defendant contends that this negates plaintiffs' contention that they regarded their residences as the addresses shown on the deed.

As noted above, we have not been provided with a report of proceedings for the hearing on plaintiffs' second motion for summary judgment on August 23, 1989, and neither has defendant provided us with a report of proceedings for the February 18, 1986, hearing on plaintiffs' first motion for summary judgment in cause No. 83—L—512. We thus will decline to speculate on the reasoning for the circuit court's decision with respect to either motion, other than as is expressed in the court's respective written orders. Moreover, we note that defendant did not take the deposition of either plaintiff in order

to investigate plaintiffs' contention that their addresses at the time of the demolitions were the addresses stated on the deed or the connection between plaintiffs and "Hudlin and Company."

We also note that while plaintiffs' answers to defendant's interrogatories propounded in either case concerning the relationship between plaintiffs and Hudlin and Company may have provided the tool for denying plaintiffs' motion for summary judgment on the issue of liability, defendant failed to include those answers as an attachment to any memorandum in opposition to plaintiffs' motions for summary judgment, nor were they to be found anywhere in the court records. Supreme Court Rule 213 provides that answers to interrogatories may be used in evidence to the same extent as a discovery deposition. (134 Ill. 2d R. 213(f).) Section 2—1005 of the Code of Civil Procedure provides that both the movant for summary judgment and opposite party thereto may submit affidavits and counteraffidavits. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—1005(a), (c).) As noted above, the court considers the pleadings, depositions, admissions and affidavits on file when determining whether no genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Plaintiffs each filed affidavits in support of their motion for summary judgment that they had never received the demolition notice. If defendant had answers to interrogatories which belied this testimony, it was defendant's duty under the rule to present those discovery answers in opposition to plaintiffs' motion. The record indicates clearly that defendant failed to present this evidence to the court on the issue of plaintiffs' receipt of the demolition notice.

In ruling on a summary judgment motion, the trial court is required to construe the pleadings, affidavits, depositions and admissions strictly against the moving party and liberally in favor of the opponent. (*Blankenship*, 209 Ill. App. 3d at 923, 568 N.E.2d at 505.) However, where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. (*Blankenship*, 209 Ill. App. 3d at 924, 568 N.E.2d at 506.) Moreover, if the opponent fails to controvert the proofs offered in support of the motion and the movant's showing of uncontradicted facts would entitle him to judgment as a matter of law, then summary judgment is proper. (*Blankenship*, 209 Ill. App. 3d at 924, 568 N.E.2d at 506.) Therefore, because plaintiffs' affidavit concerning lack of notice of the demolition hearing was uncontroverted, there was accordingly no genuine issue of material fact

on this point. In summary, we hold that the circuit court did not err in the entry of summary judgment on the issue of liability.

We next will discuss whether the circuit court's determination of damages was grossly improper and contrary to existing law. The consolidated cases proceeded to bench trial on May 15, 1990, on the issue of damages. The parties stipulated prior to trial that plaintiffs' witness, James Wilkerson, a certified real estate appraiser, if called to testify, would testify that there could be no fair market value established for the property due to its uniqueness and the absence of similar structures in this area. Plaintiffs' counsel further announced that he would have Mr. Wilkerson submit a report to the court at a later date with copies to opposing counsel, addressing certain areas that opposing counsel stated he wanted to address that he normally would go into in cross-examination, subject to defense counsel's prior review. The parties also stipulated to the admission into evidence of defendant's exhibits 1 through 11, copies of tax bills, assessments, pictures and various deeds for the subject property. Finally, the parties stipulated that the court could take judicial notice of the demolition notices which were already of record in the case; however, plaintiffs did not stipulate as to their accuracy or foundation.

Plaintiffs called Russell Hudlin, Sr., the father of plaintiff Gerald Hudlin and uncle of plaintiff Reginald Hudlin. Hudlin testified that he was 62 years old, that his present occupation was that of a pharmacist, and that he owned Hudlin Plaza, a business located at 600 East Broadway, East St. Louis, Illinois. Hudlin testified that he finished his schooling at the St. Louis College of Pharmacy in 1959 but that until approximately the mid-1960's, he worked in the stone business with his father, building several stone buildings in town, and had been a general contractor for 15 years. Hudlin discussed the "rubblestonework" method of construction which uses odd shapes of stone which are fit together like a mosaic. He also stated that it had taken him five years to learn how to lay stone. Hudlin has a brother who is still in the stone business in Edwardsville, Illinois.

Hudlin testified that he is well acquainted with the present-day cost of materials and labor in this particular trade because he was chairman of the planning committee for nine years for the St. Mary's Hospital board. In that position, Hudlin testified, he oversaw the construction of the new surgical wing and entrance lobby which ran into the millions of dollars.

Hudlin also testified that he helped construct both structures on the subject properties involved in the instant case. Hudlin testified that 2043 Bond Avenue was a building consisting of nine rental units

and the main building portion of it had a dome, such as you might see on a chapel or church, completely made of stone. The walls were made of 12-inch stone. Hudlin testified that the home located at 1322 Trendley Avenue also had 12-inch stone walls and had a fireplace that held a six-foot log and floors which were made out of Italian marble. These types of structures would be described as Wisconsin-limestone and red-granite structures. Hudlin testified that based on his prior experience as a stone mason and a contractor and a member of the planning commission of various other organizations, he would estimate the cost of reconstructing these two buildings at approximately $300,000.

Plaintiffs' exhibit 1, a copy of a quitclaim deed, was admitted into evidence without objection and was identified by Hudlin as the deed for the subject property and showed plaintiffs as the owners. Plaintiffs' exhibits 2 and 3 were also admitted into evidence without objection of defendant and were identified by Hudlin as maps showing the location of the subject property. Hudlin explained the basis for his $300,000 estimate of reconstructing two Wisconsin-limestone, red-granite structures: (1) the 4,320-square-foot, eight-unit apartment complex at 2043 Bond Avenue for $216,000; and (2) the 1,680-square-foot residence at 1322 Trendley for $84,000. Hudlin noted that the cost of materials generally made up 75% of the job but that the estimate was prepared without figuring in a cost for labor. Hudlin also noted line drawings which had been prepared showing the subject structures that had been destroyed, plaintiffs' exhibit 4, which was admitted by the court as demonstrative evidence. Hudlin also testified that he knew of no contractors available today that could rebuild these two buildings using the rubblestone work and that this would necessarily increase the cost of the building. Hudlin added that the transportation expense for the Wisconsin granite would figure into the estimate of total reconstruction cost, and he stated that they had consulted with the Stone Center in St. Louis for figures on the current price for stone. Hudlin testified that these structures require little or no maintenance or tuckpointing and that the stone will remain intact even if the windows and doors have been removed. In addition, the properties held sentimental value to the Hudlin family.

Hudlin was asked about the $1,096 assessment on the 2043 Bond Avenue property, as shown on defendant's exhibit 1, which had been admitted by stipulation, and stated that it was low because the complex had never been completed. He denied the statement in the demolition notice that the property was a fire hazard and stated that the

weeds were cut occasionally. Hudlin admitted that there had not been any rent collected at this complex since 1960.

Hudlin also admitted that while his mother had lived at the 1322 Trendley property until sometime in the 1970's, no one had lived in this house since that time. The property was assessed at $1,040, according to defendant's exhibit 2, which had been admitted by stipulation. Hudlin was not aware that the house had been vandalized but stated that he had never gone to inspect the house prior to its demolition. He did drive by the property every two or three months and stated that he had never seen a broken window on the house. Mr. Cooper, a neighbor, would occasionally cut the grass on the property and keep Hudlin advised of any repairs that needed to be made. Hudlin stated that he felt it was feasible to rebuild the properties.

There was no further evidence given at the trial on the issue of damages. The court asked the parties to submit a memorandum of law on the measure of damages, following submission of the report from plaintiffs' appraiser, and took the matter under advisement. In June 1990, plaintiffs apparently determined not to submit a written report from their appraiser, and defendant petitioned the court to submit an appraisal report for the subject properties. Plaintiffs did submit a report of their appraiser, Mr. Wilkerson, on July 13, 1990, wherein Mr. Wilkerson gave an opinion regarding depreciation, based on the Residential Cost Handbook published by Marshall and Swift. Mr. Wilkerson stated:

> "In my opinion, the two subject buildings would fall into the 'good' quality designation. The indicated typical building life for a *masonry single family residence of good quality* is 55 years. Assuming an effective age of 30 years for the subject residence the indicated depreciation is 34%. The indicated typical building life for a masonry *multi-family residential building of good quality* is 50 years. Assuming an effective age of 30 years for the subject apartment building, the indicated depreciation is 38%."

Plaintiffs submitted their memorandum of law on the measure of damages on July 16, 1990. In their memorandum, plaintiffs argued that the measure of damages was the cost of restoration. Defendant submitted no memorandum of law on the measure of damages.

The court entered an order on July 19, 1990, allowing defendant's petition to submit appraisals for the subject property but setting August 13, 1990, as the date to submit such appraisals. Defendant filed a motion for continuance on August 10, 1990, and submitted appraisal reports for the subject properties on October 9, 1990, showing

$29,000 as the value of the Bond Avenue property and $25,000 as the value of the Trendley Avenue property. However, the court entered an order on October 23, 1990, denying defendant's motion for continuance stating that it would not consider any evidence submitted after August 13, 1990.

The court entered judgment in the total sum of $189,360 for plaintiffs on November 8, 1990. In the judgment order the court stated that the judgment was based on the following calculations:

Multifamily structure at 2041-2043 Bond Avenue—

| | |
|---|---|
| Reconstruction Cost: | $216,000 |
| Less 38% Depreciation: | 82,080 |
| Total | $133,920 |

Single-family residence at Trendley Avenue—

| | |
|---|---|
| Reconstruction Cost: | $84,000 |
| Less 34% Depreciation: | 28,560 |
| Total: | $55,440 |

$133,920
+ 55,440

$189,360

The rule adopted by this court in *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, 367 N.E.2d 580, concerning the measure of damages for injury to real property, which delineates between injuries which are permanent and injuries which are temporary, appears to state the general rule which is followed in most cases: if the injury is permanent, the measure of damages is the market value of the real estate before the injury, less the market value after the injury; if the injury to real estate is not permanent, then the measure of damages is the cost of restoration. (*Arras*, 52 Ill. App. 3d at 565, 367 N.E.2d at 583-84; cf. *Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding & Machining Co.* (N.D. Ill. 1987), 677 F. Supp. 539, 554 (under Illinois law, if real property is partially injured and the injury may be repaired in a practicable manner, then the proper measure of damages is the cost of restoring the property to its condition prior to the injury; if the real property is totally destroyed or damaged in a manner which renders repair impracticable, then the diminution-in-value rule applies). The diminution-in-value rule may be in-

adequate and unfair in some instances, however; for example, where the building is used for a purpose personal to the owner, such as the family residence. (*Jones v. Consolidation Coal Co.* (1988), 174 Ill. App. 3d 38, 45-46, 528 N.E.2d 33, 38, citing *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 403 N.E.2d 316.) When damaged real property gains its principal value from personal use rather than use for pecuniary gain, the loss in market value is a poor gauge of damage, and so when the property is used in a special personal way, a criterion based on reproduction cost should be used when that can be reasonably done. (*Matich v. Gerdes* (1990), 193 Ill. App. 3d 859, 866, 550 N.E.2d 622, 627.) Under this analysis, the court held in *Matich* that where plaintiffs had totally refurbished a barn upon their purchase of the property and had personally used said barn, the proper measure of damages for its total destruction was the reproduction-cost-minus-depreciation method of loss evaluation. *Matich*, 193 Ill. App. 3d at 867, 550 N.E.2d at 627.

It is readily apparent from an examination of the circuit court's judgment that it considered restoration value less depreciation as the proper measure of plaintiffs' damages for the destruction of their buildings. We hold that the court erred as a matter of law in so finding, based on the above analysis. It cannot be disputed that the buildings were totally destroyed and so the injury to the real property was permanent. There was no evidence that plaintiffs had a personal use for the subject properties. The Trendley Avenue property had been used as a personal residence by Mr. Hudlin's mother at one time but she had moved from the property in 1970. The Bond Avenue property had been used for a pecuniary purpose, as rental units. Moreover, Mr. Hudlin testified that no rent had been collected on this property since 1960. Accordingly, we reverse the November 8, 1990, judgment of the circuit court.

Under the general rule for damage to real property where the property is totally destroyed, the court should have assessed damages as the diminution in market value for the two properties, before and after their demolition. There does not appear to have been any evidence presented at trial concerning the market value of the properties prior to their demolition or the value of the postdemolition unimproved land. We note that defendant's appraisals, which the court refused to consider, did offer some evidence of fair market value of the buildings, landscaping and land. Although plaintiffs contend that defendant failed to offer a memorandum of law on the measure of damages and failed to specify alternative measures of damages in its post-trial motion and therefore cannot now complain that an improper

measure of damages was used by the court, we note that it was plaintiffs' burden to prove damages in the instant case. We remand this case to the circuit court of St. Clair County for further evidence on diminution of market value, the proper measure of damages in this case.

The judgment of the circuit court is affirmed in part and reversed and remanded on the issue of damages only.

Affirmed in part; reversed and remanded in part.

CHAPMAN and LEWIS, JJ., concur.