ELWIN O. JONES *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF WILLOW SPRINGS *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—0678

Opinion filed December 23, 1992.

236

Crotty & Chacon, of Chicago (James T. Crotty, Zacarias R. Chacon, and Deborah J. Allen, of counsel), for appellants.

Vincent C. Cipolla, of Kurnik, Cipolla, Stephenson & Barasha, Ltd., of Arlington Heights, for appellee Village of Willow Springs.

John D. Handbury, of Crowley, Ross & DeMeo, of Chicago, for appellee Justice/Willow Springs Water Commission.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Elwin O. Jones, the Blue Front Lounge and National Fire Insurance Company, as subrogee, filed a negligence action against the defendants, the Village of Willow Springs (Village) and the Justice/Willow Springs Water Commission (Commission), seeking damages resulting from a fire. The plaintiffs alleged that the Commission was guilty of willful and wanton misconduct in failing to maintain adequate water pressure in its water mains used for fire-fighting purposes. The plaintiffs further alleged that the Village was guilty of willful and wanton misconduct based on its failure to remedy the inadequacy of the water pressure and its failure to extinguish the fire. Both defendants filed motions to dismiss based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 et seq.). The trial court granted the motions to dismiss and the plaintiffs have appealed.

On appeal, the plaintiffs contend that the Commission is not entitled to the protection of the Tort Immunity Act. The plaintiffs argue that the Tort Immunity Act does not apply where a public entity is acting in a proprietary rather than a governmental capacity and that the operation of a water works system is a proprietary function. As to the Village, the plaintiffs contend that their complaint properly alleged a "special duty" exception to the Tort Immunity Act and further that the Act does not provide the Village with protection for the willful and wanton misconduct alleged in the complaint.

The original complaint alleged that on November 27, 1986, plaintiff Elwin O. Jones operated a business known as the Blue Front Lounge, located at 9053 South Archer Avenue in Willow Springs, Illinois, and that he relied upon the Village and the Commission to provide adequate fire protection. The complaint further alleged that the Village and the Commission "assumed a duty to provide adequate fire protection to parties such as the plaintiff." According to the complaint, both defendants were guilty of willful and wanton misconduct because they knew that there was an inadequate supply of water to the western edge of the Village and that the water pressure was inadequate for fire hydrants to operate properly, yet failed to remedy the inadequacies. The complaint also stated that the defendants held themselves out as having adequate fire protection services when it was patently obvious that the facilities were inadequate, and that agents of the Village "watched and failed to provide or render any aid or service or attempt to stop said fire."

The Village filed a motion to dismiss based on the Tort Immunity Act. The trial court granted the motion with leave to amend. An amended complaint, directed solely against the Commission, alleged that the Commission owned and operated for profit the water, water lines and water facilities used by the Village for fire-fighting purposes. The complaint stated that the Commission "was in the business of selling water to the VILLAGE for the purpose of extinguishing fires." The complaint further alleged that the Commission was under a duty to maintain adequate water pressure in its lines to extinguish fires and that it breached this duty. According to the amended complaint, "[a]s a result of [the Commission's] failure to maintain adequate water pressure to extinguish fires, fire fighters were unable to extinguish the fire."

The Commission moved to dismiss the amended complaint, claiming the protection of the Tort Immunity Act. Following a hearing, the trial court granted the motion and dismissed the cause.

■■ Article V of the Tort Immunity Act specifically addresses the immunity afforded public entities and public employees in the area of fire protection services. Section 5—101 provides that "[n]either a local public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection." (Ill. Rev. Stat. 1989, ch. 85, par. 5—101.) Section 5—102 states that where a local public entity does undertake to provide fire protection services, neither it nor its employees are liable for an injury "resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection

facilities." (Ill. Rev. Stat. 1989, ch. 85, par. 5—102.) Section 5—103, which deals with the condition of fire-fighting equipment and the acts or omissions of fire fighters, provides as follows:

"(a) Neither a local public entity, nor a public employee acting in the scope of his employment, is liable for an injury resulting from the condition of fire protection or firefighting equipment or facilities. ***

(b) Neither a local public entity nor a public employee acting in the scope of his employment, is liable for an injury caused by an act or omission of a public employee while engaged in fighting a fire. However, this Section shall not apply if the injury is caused by the willful and wanton conduct of the public employee." Ill. Rev. Stat. 1989, ch. 85, par. 5—103.

The plaintiffs first contend that the trial court erred in dismissing their amended complaint against the Commission. The plaintiffs argue that the Tort Immunity Act does not apply where a public entity is acting in a proprietary rather than a governmental capacity and that the operation of a water works system is a proprietary function.

In *Merrill v. City of Wheaton* (1942), 379 Ill. 504, 41 N.E.2d 508, the Illinois Supreme Court recognized the dichotomy of roles performed by a municipal corporation. The court stated that when a municipality acts in a manner which involves a public purpose and benefits the public in general, it is acting in its governmental capacity. However, where the municipality acts to accomplish a private purpose for its own corporate benefit, it is acting in its proprietary capacity. It has been held that a municipal corporation may be held liable for damages resulting from the performance of its proprietary functions. (*Gravander v. City of Chicago* (1948), 399 Ill. 381, 78 N.E.2d 304.) The Tort Immunity Act specifically states that its purpose is to protect local public entities and public employees from liability arising from "the operation of government." Ill. Rev. Stat. 1989, ch. 85, par. 1—101.1(a).

The plaintiffs cite two cases, *People ex rel. Chicago Title & Trust Co. v. Mission Brook Sanitary District* (1966), 76 Ill. App. 2d 423, 222 N.E.2d 8, and *White v. City of Centralia* (1956), 8 Ill. App. 2d 483, 131 N.E.2d 825, to support their argument that the function of the Commission in providing water for various purposes, including fire fighting, was proprietary rather than governmental in nature. *Mission Brook* involved the question of whether a sanitary district and a village could operate water distribution systems with co-equal jurisdiction and has no bearing upon the issues of negligence and immunity raised in the case at bar. *White*, on the other hand, involves a

situation somewhat similar to the one before us and is quite instructive in its reasoning. In *White*, the plaintiff's decedent, an 11-year-old boy, drowned in a water reservoir which was operated as a recreational lake by the defendant city. The plaintiff filed a negligence action against the city, alleging that it was acting in its proprietary capacity in operating the water system. In affirming the dismissal of the complaint, the appellate court stated that "[i]t is apparent that a defendant City when owning and operating a water system and selling water to individuals is engaged in the business or proprietary capacity and not in a governmental capacity, but it is also clear that the City may act in a dual capacity, one proprietary and the other governmental, and when acting in its governmental capacity cannot be held liable for negligence." (*White*, 8 Ill. App. 2d at 486-87, 131 N.E.2d at 827.) The court then stated that the establishment and maintenance of recreational grounds by a municipality constitutes the performance of a governmental function and that the city was accordingly immune from liability.

■ As in *White*, the Commission in the case at bar may be acting in a proprietary capacity when operating its water system and selling water to individuals. However, when it undertakes to provide water for a purpose related to the benefit of the general public, such as fire fighting, we believe that it is acting in its governmental capacity. In accord with this view is the decision in *Consolidated Biscuit Co. v. Illinois Iowa Power Co.* (1939), 303 Ill. App. 80, 24 N.E.2d 582, a case which is factually similar to the instant cause. In *Consolidated Biscuit*, the plaintiff brought an action against a water works company based in part on the company's allegedly negligent failure to supply sufficient water pressure to extinguish a fire on the plaintiff's property. The court affirmed the dismissal of the negligence counts on the grounds that there was no duty owed by the water works company to the plaintiff. For the foregoing reasons, we believe that the trial court properly dismissed the amended complaint against the Commission.

The plaintiffs next contend that the court erred in dismissing their complaint against the Village. The plaintiffs make two arguments in support of this contention. First, they argue that the allegations of the complaint were sufficient to establish a "special duty" exception to the general rule of tort immunity. Second, they maintain that willful and wanton misconduct is an exception to the Tort Immunity Act.

■ The special-duty doctrine provides an exception to the general rule that a public entity or employee is immune from tort liability while performing a governmental function. (*Lane v. City of Harvey*

(1988), 178 Ill. App. 3d 270, 275, 533 N.E.2d 75.) Under this doctrine, a public entity may be liable for injuries to an individual where a public employee has assumed a special duty to the person which elevates his status to something more than a member of the general public. (*Lane*, 178 Ill. App. 3d 270, 533 N.E.2d 75.) The special-duty doctrine applies where:

> "(1) [T]he municipality is uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there are allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions are either affirmative or willful in nature; and (4) the injury occurred while the plaintiff was under the direct and immediate control of employees or agents of the municipality." *Lane*, 178 Ill. App. 3d at 276, 533 N.E.2d at 80.

*Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, is an example of a case in which the court found the existence of a special duty. In *Gardner*, police officers requested the plaintiff to accompany them to a certain location in order to identify four suspects. While at that location, in the presence of the police officers, the suspects attacked and seriously injured the plaintiff. The court found that a special duty existed toward the plaintiff because the police had called him into a position of peril. Subsequent cases have held that in order to satisfy the "direct and immediate control" prong, the plaintiff must show that the public official was responsible for the occurrence which gave rise to the need for protection. (*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 277, 533 N.E.2d 75; *Jackson v. Chicago Firefighters Union, Local No. 2* (1987), 160 Ill. App. 3d 975, 982, 513 N.E.2d 1002; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 508-09, 475 N.E.2d 960.) Thus, liability has been found in the situation where a public official created the position of peril (*Gardner*, 71 Ill. App. 3d 373, 219 N.E.2d 147), but not where the plaintiff sought protection which was simply not provided (*Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183).

■ In our view, the plaintiffs have failed to allege the existence of a special duty owed to them by the Village. There is no indication that the Village assumed a special duty toward the plaintiffs which elevated their status to something more than members of the general public. Also, the plaintiffs have failed to establish that the Village or its fire fighters were responsible for the occurrence which gave rise to the need for protection. At most, the plaintiffs sought protection

which was not provided. Under these circumstances, no special duty exists.

■ The plaintiffs also contend that the Tort Immunity Act does not provide immunity for willful and wanton misconduct. They cite section 2—202 of the Act, which states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Ill. Rev. Stat. 1989, ch. 85, par. 2—202.

In *Jackson v. Chicago Firefighters Union, Local No. 2* (1987), 160 Ill. App. 3d 975, 980, 513 N.E.2d 1002, this court determined that article V of the Tort Immunity Act was intended to provide blanket immunity in the specific area of fire protection and was not subject to the exception for willful and wanton misconduct stated in section 2—202.

In their reply brief, the plaintiffs raise the argument that section 5—103 of the Tort Immunity Act specifically creates an exception for willful and wanton conduct in the area of fire protection. Section 5—103 provides immunity from liability for injuries resulting from the condition of fire-fighting equipment or the acts or omissions of public employees engaged in fighting a fire. Section 5—103(b) states that "this Section shall not apply if the injury is caused by the willful and wanton conduct of the public employee." Ill. Rev. Stat. 1989, ch. 85, par. 5—103(b).

■ The plaintiffs charge that the Village was guilty of willful and wanton misconduct in two respects. First, they argue that the Village failed to remedy known inadequacies in the system used to supply water for fire-fighting purposes. Second, they maintain that the fire fighters did nothing but "stand and observe" while fire destroyed the premises.

In answer to the first argument, it must be noted that simply inserting the words "willful and wanton" into a complaint will not defeat a public entity's claim of immunity. It is clear under section 5—101 of the Act that the Village was under no duty to provide fire protection services to the plaintiffs. Under section 5—102, the Village could not be held liable if it did in fact undertake to provide such services but provided inadequate facilities. The complaint at most establishes that the Village undertook to provide fire protection services, but failed to provide adequate facilities for that purpose. In our view, there is no factual basis to support the plaintiffs' claim that the Village's failure to furnish an adequate supply of water for fire-fighting purposes was willful and wanton in nature.

The plaintiffs' second allegation of willful and wanton misconduct is directed toward the fire fighters who responded to the fire. The plaintiffs alleged that they acted willfully and wantonly in simply standing there and observing while the fire consumed the building. The facts alleged in the plaintiffs' complaint established that there was inadequate water pressure in the supply lines to enable the fire fighters to extinguish the fire. It can be reasonably inferred from these allegations that the fire fighters' inaction stemmed from the lack of water with which to fight the fire. The plaintiffs have not alleged any other act or omission on the part of the fire fighters which would rise to the level of willful or wanton misconduct.

For the foregoing reasons, the judgments of the trial court are affirmed.

Affirmed.

JOHNSON and McMORROW,[1] JJ., concur.

---

[1]Justice McMorrow participated in the disposition of this case prior to becoming a member of the supreme court of Illinois.