Tim **PIERCE and Sheryl Pierce,**
**Plaintiffs–Appellants,**

v.

**VILLAGE OF DIVERNON, ILLINOIS, a Village duly constituted under the laws of the State of Illinois, Defendant–Appellee.**

No. 92–3539.

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 23, 1993.

Decided March 3, 1994.

---

G. Michael Taylor, Long, Morris, Myers, Rabin, Shuff & Taylor, Springfield, IL, for plaintiffs-appellants.

D. Bradley Blodgett, William Hardy, Hinshaw & Culbertson, Springfield, IL, for defendant-appellee.

Before BAUER, CUDAHY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case was precipitated by a fire that damaged the home of plaintiffs Tim and Sheryl Pierce (the "Pierces"). Plaintiffs allege that the Village of Divernon, Illinois (the "Village") negligently failed to provide an adequate supply of water to fight the fire. They also maintain that the Village deprived them of their property without due process when it obtained an *ex parte* demolition order and demolished what remained of the fire-damaged structure. The district court dismissed the two counts alleging a failure to provide an adequate water supply and later granted summary judgment in favor of the Village on the due process claim. The Pierces appeal, and we affirm.

## I. BACKGROUND

The fire occurred on February 26, 1989, extensively damaging the kitchen, bathroom, and dining room of the Pierce residence and destroying more than half of the roof. The remainder of the residence suffered severe water damage. The foundation of the home survived, however, and the Pierces were able to salvage some of their personal property. After the fire, two large piles of rubble were left on the premises; they contained nails and other objects dangerous to children. In addition, two large holes in the remaining structure permitted easy access to curious children. This caused concern to neighbors, who presented a petition to the Village Board requesting that it address the potential safety hazard. On June 14, 1989, the Village Board passed an ordinance declaring the Pierce property a public nuisance and directing the Pierces to remedy the problem within twenty days; otherwise, the Village would enter the property to abate the nuisance. Notice of the ordinance was mailed to plaintiffs on June 22, 1989, and they received it on June 26. By August 8, nothing had been done, and counsel for the Village notified Robert Mueller, who then was plaintiffs' counsel, that the property would be demolished in short order. On August 17, counsel told Mueller that the Village would proceed with the demolition. After each conversation, Mueller notified one or both plaintiffs of the Village's intentions. He even suggested at one point that the Pierces permit the Village to proceed so as to eliminate the possibility that someone might be injured on the property. On August 24, the Village appeared *ex parte* before the Circuit Court of Sangamon County and obtained an order permitting it to abate the nuisance. The Village then demolished the remains of the Pierce residence.

Plaintiffs filed a three-count complaint in the district court. Count I was brought under Illinois common law and alleged that the Village had interfered with the efforts of the Divernon Fire Protection District (the "FPD") by failing to insure an adequate water supply and adequate water pressure within its boundaries. The Pierces alleged

that Village officials had been aware of the potential problem prior to the fire but had failed to remedy it. Moreover, the Pierces alleged that the blaze at their residence had raged for approximately fifty minutes before Village officials finally contacted the local Water Commission in an effort to supplement the water supply. The Village's inaction allegedly enhanced the damage, as plaintiffs contended that with adequate water and water pressure, the FPD would have been able to extinguish the fire after only minor damage. Count II relied on similar allegations to assert a Fourteenth Amendment due process violation. Count III addressed the subsequent demolition of the property, alleging that the Village had violated plaintiffs' due process rights by obtaining an *ex parte* order and demolishing their property.

The Village moved to dismiss counts I and II. The district court referred the motion to a magistrate-judge, who recommended that it be granted. The district court agreed, holding that as a local public entity, the Village was immune from tort liability pursuant to 745 ILCS § 10/5–101 *et seq.* The court also dismissed the Fourteenth Amendment claim, finding that plaintiffs had no constitutional right to fire protection.[1]

The parties subsequently filed cross-motions for summary judgment on the due process claim. The district court granted the Village's motion, finding that the Village had provided plaintiffs adequate notice of its intention to demolish the property. Moreover, the court held that neither the Illinois statute governing the demolition of dangerous or unsafe buildings nor the Due Process Clause prohibited a municipality from obtaining an *ex parte* order where the property owner had adequate prior notice of the impending demolition.

## II. DISCUSSION

### A. Count I—Failure to Provide Adequate Water Supply

██ We review de novo the district court's decision to dismiss count I. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir.1993). We

---

1. The Pierces have not appealed the district court's dismissal of count II.

accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the Pierces' favor. *Id.; Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992).

■ The first and indeed fatal obstacle to plaintiffs' state negligence claim is the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS § 10/1–101 *et seq.* The provisions of that Act relating to fire protection and rescue services codify the common-law rule that a municipality owes the public no general duty of fire protection and that it therefore cannot be liable either for failing to provide or negligently providing fire protection services. *Martin v. Lion Uniform Co.,* 180 Ill.App.3d 955, 129 Ill.Dec. 686, 687–88, 536 N.E.2d 736, 737–38 (1989); *see also Aikens v. Morris,* 145 Ill.2d 273, 164 Ill.Dec. 571, 574 n. 1, 583 N.E.2d 487, 490 n. 1 (1991).[2] The Act was thus "intended to provide blanket immunity in the specific area of fire protection...." *Jackson v. Chicago Firefighters Union, Local No. 2,* 160 Ill.App.3d 975, 112 Ill.Dec. 393, 396, 513 N.E.2d 1002, 1005 (1987); *see also McGuckin v. Chicago Union Station,* 191 Ill.App.3d 982, 139 Ill.Dec. 76, 82, 548 N.E.2d 461, 467 (1989).

■ Section 10/5–101 provides immunity to a "local public entity" if it fails to establish a fire department or to provide any fire protection whatsoever.[3] Thus, if a local public entity chooses, for whatever reason, not to provide fire protection services, it cannot be held liable for that choice under Illinois law. Section 10/5–102, in turn, declares that once a local public entity undertakes to provide fire protection services, neither it "nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire

or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." Plaintiffs' negligence claim would seem to fall within either or both of these provisions. An alleged failure to provide sufficient water or water pressure could be viewed either as a complete failure to provide fire protection or other emergency services under section 10/5–101 or as a failure to provide sufficient "facilities" to suppress or contain a fire under section 10/5–102. Either way, the Village is immune. The Pierces also allege that the Village negligently failed to request additional water from the Water Commission in the course of the fire, but that too arguably falls within the immunity conferred by section 10/5–102. Any doubt as to the scope of that section is eased, moreover, by section 10/5–103(b), which provides that "[n]either a local public entity nor a public employee acting in the scope of his employment, is liable for an injury caused by an act or omission of a public employee while engaged in fighting a fire." [4]

■ Indeed, plaintiffs concede that these provisions shield the FPD from liability, but they contend that the Act does not confer immunity on the Village, whose negligence allegedly prevented the FPD from containing the fire. Plaintiffs essentially allege that the Village interfered with the FPD's attempts to control the blaze and that such conduct is not covered by the Act. The argument is clever, but it must fail. The Village is plainly a "local public entity" under 745 ILCS § 10/1–206, meaning that it, like the FPD, is immune from liability for inadequate fire protection services.[5] The Pierces' "interference" theory is simply another way of saying that the Village either failed to provide fire

---

**2.** The Constitution also "creates no positive entitlement to fire protection." *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984).

**3.** That section provides in pertinent part that "[n]either a local public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection, rescue or other emergency service." 745 ILCS § 10/5–101.

**4.** The immunity conferred by this section would not apply if the injury were "caused by the will-

ful and wanton conduct of the public employee." 745 ILCS § 10/5–103(b). Yet the Pierces do not suggest that the exception applies here. *See also Jones v. Village of Willow Springs,* 240 Ill.App.3d 235, 181 Ill.Dec. 225, 230, 608 N.E.2d 298, 303 (1992).

**5.** The Pierces do not allege that the Village owed them a "special duty" that is different from its duty to the public in general. *See, e.g., Leone v. City of Chicago,* 156 Ill.2d 33, 188 Ill.Dec. 755, 757, 619 N.E.2d 119, 121 (1993).

protection under section 10/5–101 or failed to provide sufficient "facilities" to suppress or contain the fire under section 10/5–102. Indeed, the Illinois Appellate Court has found that a local water commission is immune from allegations that it breached a duty to maintain water pressure sufficient to extinguish a fire. *Jones v. Village of Willow Springs,* 240 Ill.App.3d 235, 181 Ill.Dec. 225, 227–28, 608 N.E.2d 298, 300–01 (1992). Because the Village is clearly protected by the Tort Immunity Act, the district court properly dismissed plaintiffs' negligence claim.[6]

## B. Count III—Demolition of Property

■ The Pierces next argue that their due process rights were violated when the Village obtained an *ex parte* demolition order and demolished their property. The district court granted the Village's motion for summary judgment, and we review that decision de novo, considering the evidence in the light most favorable to plaintiffs and granting them the benefit of all reasonable inferences. *Saxton v. American Tel. and Tel. Co.,* 10 F.3d 526, 532 (7th Cir.1993).

■ In proceeding to demolish the Pierce property, the Village acted pursuant to Ill. Rev.Stat. ch. 24, ¶ 11–31–1(a) (1989) (amended and recodified at 65 ILCS § 5/11–31–1(a)):

> The corporate authorities of each municipality may demolish, repair or enclose or cause the demolition, repair or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of any such municipality.... The corporate authorities shall apply to the circuit court of the county in which such building is located for an order authorizing such action to be taken with respect to any such building if the owner or owners thereof, including the lien holders of record, after at least 15 days' written notice by mail so to do, have failed to put such building in a safe condition or to

demolish it.... The hearing upon such application to the circuit court shall be expedited by the court and shall be given precedence over all other suits.

The Village obtained an *ex parte* order of demolition on August 24, 1989. Plaintiffs contend that their due process rights were violated because the Village had failed to serve them with a summons or a copy of its petition, nor were they notified of any hearing on the petition. The district court held that neither the Illinois statute nor the Due Process Clause prohibited the Village from obtaining an *ex parte* demolition order once it had given the plaintiffs at least fifteen days' written notice of its intention to demolish the property. We agree that the Pierces have failed to establish a due process violation.

First, there can be no dispute that plaintiffs were provided the fifteen days' written notice required by the Illinois statute. The Village Board declared the Pierce property a public nuisance by ordinance on June 14, 1989. It mailed a notice to plaintiffs on June 22, 1989, and they received the notice on June 26. The notice alerted the Pierces that if they did not clean up the property within twenty days, the Village would abate the nuisance itself and attempt to collect its costs. More than a month after plaintiffs received this notice, counsel for the Village twice notified their counsel that the Village would demolish the property if the Pierces failed to act. Almost two months had passed when the Village finally obtained its demolition order. Thus, given the adequacy of notice, the only remaining question is whether the *ex parte* nature of the circuit court proceeding violated plaintiffs' right to due process.

The Pierces contend that two Illinois decisions support their view that notwithstanding adequate notice, the property should not

---

**6.** The Pierces ask that we certify to the Illinois Supreme Court the question of whether the Tort Immunity Act bars an action "against a municipality for failure to maintain a sufficient supply of water to allow another, separate local governmental entity to extinguish a fire, resulting in damage to a home located within the boundaries

of the municipalit[y]?" (Pierces' Br. at 6.) We see no reason to certify such a question when the statutory language and the existing case law make the answer so plain. *See, e.g., Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699, 705 (7th Cir.1994); *Rutledge v. Scott Chotin, Inc.,* 972 F.2d 820, 825–26 (7th Cir.1992).

have been demolished without their having been served with a summons and a copy of the Village's petition. *See City of Chicago v. Moran*, 17 Ill.App.3d 515, 308 N.E.2d 324 (1974); *City of Chicago v. Leakas*, 6 Ill. App.3d 20, 284 N.E.2d 449 (1972). In effect, they argue that absent service of process, the circuit court lacked jurisdiction to enter any order affecting their property. Although both *Moran* and *Leakas* held that service by publication of a complaint for demolition was insufficient to confer jurisdiction on the circuit court in the circumstances presented there, the property owners in those cases had not received prior notice of the impending demolitions pursuant to the Illinois statute. In each instance, the court held that the City had failed to make a diligent inquiry into the whereabouts of the owner prior to resorting to service by publication. *Moran*, 308 N.E.2d at 328; *Leakas*, 284 N.E.2d at 455; *see also Hudlin v. City of E. St. Louis*, 227 Ill.App.3d 817, 169 Ill.Dec. 368, 375, 591 N.E.2d 541, 548 (1992) (discussing *Moran*). Those decisions thus provide no guidance for the case in which the property owners had actual notice that the Village intended to demolish their property.

The Pierces' position also is undercut by Illinois decisions suggesting that an expedited procedure may be appropriate where necessary to abate a nuisance posing an immediate danger to public health and safety. The Illinois courts have emphasized that paragraph 11–31–1(a) was intended to provide an expeditious means for a municipality to remove a structure that poses a danger to the community. *See, e.g., City of Bloomington v. Bible Truth Crusade*, 197 Ill.App.3d 793, 144 Ill.Dec. 220, 221–22, 555 N.E.2d 117, 118–19 (1990); *City of Peru v. Bernardi*, 84 Ill. App.3d 235, 39 Ill.Dec. 709, 713, 405 N.E.2d 462, 466 (1980); *City of Chicago v. General Realty Corp.*, 133 Ill.App.2d 662, 273 N.E.2d 712, 716 (1971), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). Indeed, that statute requires that the hearing on an application "shall be expedited ... and shall

be given precedence over all other suits." Ill.Rev.Stat. ch. 24, ¶ 11–31–1(a) (1989). The Illinois courts have not hesitated to disregard the statute's notice and court order requirements where an *immediate* danger to the public is posed. *See City of Chicago v. Garrett*, 136 Ill.App.3d 529, 91 Ill.Dec. 127, 131–32, 483 N.E.2d 409, 413–14 (1985); *see also Turpen v. City of St. Francisville*, 145 Ill. App.3d 891, 99 Ill.Dec. 616, 619, 620, 495 N.E.2d 1351, 1354, 1355 (1986) ("In such an emergency situation, the City was not required to adhere strictly to section 11–31–1 notice requirements, nor was a circuit court order a necessary prerequisite to City sanctioned demolition of the Deisher building"). Waiver of the statutory requirements is certainly the exception rather than the rule, and we are not suggesting that such a dire emergency existed here.[7] We raise the point only to show that the Illinois courts have not strictly construed the statute to require notice and a court order in every case.

Although plaintiffs' reliance on *Moran* and *Leakas* focuses on whether Illinois law would permit entry of a demolition order *ex parte*, that does not address whether such an order would violate the Due Process Clause. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Plaintiffs' due process claim does not necessarily require us to determine whether the Village complied with the requisite Illinois procedures, but only whether the procedures actually followed were consistent with due process. We find that they were. Although we are concerned whenever individuals are deprived of property without a full and fair hearing before an impartial decision-maker, we believe that here the Village provided plaintiffs with sufficient notice of its intentions to meet its due process obligations.

The due process inquiry requires us to balance the Village's legitimate interest in protecting its citizens from a potentially dangerous public nuisance against plaintiffs' in-

---

7. Indeed, although the property apparently posed a hazard to neighborhood children, the Village waited two months after passing the ordinance before it applied for a demolition order, suggesting that the Village did not perceive a grave danger to public safety.

terest in receiving notice and a hearing before the circuit court. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Because the Village provided plaintiffs ample notice and opportunity to abate the nuisance prior to initiating the demolition procedure and because the structure posed a danger to public health and safety, the Village's interest predominates. Despite notice and regular warnings from the Village and its counsel, the Pierces made no attempt to repair the property, nor did they request either a further hearing or reconsideration by the Village Board of its public nuisance declaration. *See Hagen v. Traill County*, 708 F.2d 347, 348 (8th Cir.1983). Indeed, the Pierces raise no objection to the Village Board's conclusion that the fire-damaged property constituted a public nuisance. Instead, they maintain only that they were deprived of the opportunity to argue to the circuit court that they were poised to address the problem.[8] Yet neither the Pierces nor their attorney made any such representation to the Village at the time. For example, the Pierces never indicated that they were preparing to repair the property or to demolish it on their own and that they needed additional time to do so. Indeed, the record suggests that the Pierces were financially unable either to repair or demolish the property. In light of the adequacy of notice and the lack of any response, we see no due process violation in this *ex parte* proceeding.[9] *See Traylor v. City of Amarillo*, 492 F.2d 1156, 1159 (5th Cir.1974) (where procedural fairness has been accorded the property owner, the Due Process Clause does not require "that a judicial determination precede the demolition of property found to be a nuisance."); *cf. Hroch v. City of Omaha*, 4 F.3d 693, 696 (8th Cir.1993) (no due process violation where property owner had actual notice of municipality's intent).

## III. CONCLUSION

Because the Village is statutorily immune from the Pierces' negligence claim, the district court properly dismissed count I. The court also properly granted summary judgment in favor of the Village on count III, as plaintiffs could not establish that their due process rights were violated when the Village obtained an *ex parte* demolition order and demolished their property.

AFFIRMED.

---

**8.** The ordinance itself did not suggest that the Pierces would have a further opportunity to make their case before the circuit court, as it stated that Village officials "are authorized and directed to enter upon such premises and cleanse, abate and remove such nuisance" if the problem is not remedied within twenty days.

**9.** The Supreme Court's recent decision in *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), does not require a different result. There, the Court held that the Due Process Clause requires notice and a hearing before the government may seize real property in a civil forfeiture case. Yet the government's interest in conducting an *ex parte* seizure in those circumstances, where there is no threat that the property could be lost (*id.* at —— –——, 114 S.Ct. at 502–03), is not compara-

ble to a municipality's interest in protecting the public from structures that pose a danger to the health and welfare of the community. Moreover, the Pierces' interest in retaining control over their property is also less compelling than that of the property owners in *James Daniel Good*, as no one lived in the Pierce residence, and plaintiffs had more than adequate notice of the public danger it posed and of the Village's intention to demolish it. *James Daniel Good* reiterates that the fundamental purpose of a notice and hearing requirement " 'is to protect [the individual's] use and possession of property from arbitrary deprivations....' " *Id.* at ——, 114 S.Ct. at 501 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972)). The notice provided to plaintiffs here minimized any potential for such a deprivation.