INDEPENDENT TRUST CORPORATION *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO DEPARTMENT OF WATER, Defendant-Appellee.

First District (4th Division)   No. 1—96—2978

Opinion filed March 31, 1998.

Mark T. Mullen and James P. Cullen, Jr., both of Cozen & O'Connor, of Philadelphia, Pennsylvania, and Brian Bell and Barbara Petrungar, both of Swanson, Martin & Bell, of Chicago, for appellants Independent Trust Corporation and First Management Realty Corporation.

Clausen Miller, P.C., of Chicago (James T. Ferrini, Richard W. Strawbridge, David M. Cabrere, and Susan Condon, of counsel), for appellant Pago Pago II, Inc.

Patricia T. Bergeson, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Timothy W. Joranko, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

These three consolidated cases arose from an incident on February 20, 1994, in which water flooded the basement of the building located on the corner of Wells and Randolph Streets, known as 205 West Randolph Street in the City of Chicago (the building). The plaintiffs in all three actions allege that the city negligently maintained, inspected, or repaired an underground pipe near their property. The six-inch-diameter pipe in question, a dedicated hydrant

lead, connected a fire hydrant adjacent to 205 West Randolph to an eight-inch-diameter water main running north and south under the west side of North Wells Street. Finding that the hydrant lead was "firefighting equipment or facilities" within the meaning of section 5—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/5—103(a) (West 1994)), the circuit court granted the city's motion to dismiss all three cases pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). Plaintiffs appeal. We reverse. The relevant facts are as follows.

The City of Chicago operates a water department which serves as the exclusive provider of water to all residential and commercial customers within the city. The water department installs, repairs, inspects, and maintains underground water pipes, including an eight-inch-diameter main on the west side of Wells Street running north and south in front of the building. From this eight-inch-diameter main three six-inch-diameter underground branch pipes extend toward the building. Two of the branch pipes provide water service to buildings at or near 205 West Randolph. The third branch pipe was about 10 feet long and connected to and provided water to a fire hydrant located on the sidewalk adjacent to the building. This pipe will be referred to by this court as a "hydrant lead."[1] The hydrant lead is dedicated, meaning that its sole function is to provide water to the hydrant.

Plaintiffs Independent Trust Corp. (ITC) and First Management Realty Corp. own and operate the building located at 205 West Randolph Street, Chicago, Illinois. Plaintiffs Pago Pago II, Inc. (Pago Pago), and Corporation Supply Company, Inc. (Corporation Supply), each operated a business in the building at the time of the incident.

On February 20, 1994, the water department received a call regarding a water leak at the building. The building's basement and sub-basement were flooded with in excess of 10 feet of water. Water department personnel responded to the scene, removed water from the building, and investigated the cause of the flooding. Water department employees excavated the area around the hydrant, exposing the hydrant base and the hydrant lead. The hydrant base was disconnected from the hydrant lead. Water department employees observed multiple hairline cracks in the hydrant lead. Based on the water department's investigation, these cracks in the hydrant lead caused

---

[1]The parties refer to this six-inch branch pipe as "a water main," "a pipe" and a "hydrant lead." We find these terms interchangeable, but will refer to it as a hydrant lead for consistency.

the water damage. The hydrant itself was not damaged, defective, or in any way the cause of the water damage. Indeed, the hydrant was removed and later used elsewhere in the city. The hydrant lead was then plugged.

One fire department employee responded to the scene on a "non-emergency" call. The firefighter left the scene without taking any action because the care and maintenance of underground water pipes are not the responsibility of the fire department.

Lumbermens Mutual Casualty Company, as subrogee of Corporation Supply, filed case number 95 L 2221 against the city on February 14, 1995. ITC filed case number 95 L 2325 against the city on February 14, 1995. Pago Pago filed case number 95 L 2567 on February 17, 1995. All three plaintiffs alleged that the city negligently maintained, inspected, or repaired an underground pipe near the building.

The city answered all three complaints and pled as affirmative defenses the immunities conferred by sections 3—102 and 5—103(a) of the Tort Immunity Act (745 ILCS 10/3—102, 5—103(a) (West 1994)). The three cases were consolidated on October 4, 1995, upon motion of the city.

On January 30, 1996, the city filed a motion to dismiss the complaints pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). The city asserted that the plaintiffs' claims were barred by section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)), which confers immunity for injuries "resulting from the condition of fire protection or firefighting equipment or facilities." Following a hearing on the motion, the circuit court found that the hydrant lead was firefighting equipment and therefore section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) immunized the city from plaintiffs' claims. The circuit court granted the city's motion and dismissed the cases with prejudice. Plaintiffs appeal.

On appeal plaintiffs contend that (1) the circuit court erred in dismissing the complaints because plaintiffs' complaints assert claims upon which relief can be granted, since municipal water providers are not covered under the Tort Immunity Act; (2) the circuit court erred in granting defendant's motion to dismiss because section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) does not encompass underground water mains; and (3) the water department is liable because section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) codifies the "no duty" rule.

■ When reviewing the dismissal of a complaint, the pertinent in-

quiry is whether the allegations, when viewed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 615 N.E.2d 50 (1993). Our review of the dismissal is *de novo. Toombs*, 245 Ill. App. 3d at 583.

■ Our supreme court abolished sovereign immunity in 1959 in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 163 N.E.2d 89 (1959). In response the legislature enacted the Tort Immunity Act in 1965. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 665 N.E.2d 808 (1996). Under the Tort Immunity Act, governmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions on that liability. *Barnett*, 171 Ill. 2d at 386. Immunity, therefore, must be predicated upon a specific statutory enactment, and governmental units are immune only to the extent the General Assembly has provided such immunity. *Barnett*, 171 Ill. 2d at 386. The provisions of the Tort Immunity Act are in derogation of the common law and therefore must be strictly construed. *Aikens v. Morris*, 145 Ill. 2d 273, 583 N.E.2d 487 (1991).

■ We agree with plaintiffs that the Tort Immunity Act does not grant general immunity to municipal water providers. Therefore, as a general rule, municipal water providers are liable for their negligent conduct, unless their specific conduct is encompassed within a specific section of the Tort Immunity Act. *Barnett*, 171 Ill. 2d at 386.

The specific statutory enactment at issue in this case is section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)), which provides in pertinent part:

> "Neither a local public entity, nor a public employee acting in the scope of his employment, is liable for an injury resulting from the condition of fire protection or firefighting equipment or facilities."

We reject defendant's contention that the immunity granted by section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) applies because "the condition of the hydrant—that it was no longer attached to its lead—caused plaintiffs' injuries." This contention is simply not supported by the record. The record indicates that the injuries resulted from one or more cracks in the hydrant lead, not from any problem with or condition of the hydrant. Further we note that defendant's statement that the plaintiffs have all agreed that the injuries occurred because the hydrant broke off its dedicated lead is a gross mischaracterization of the record. Throughout the proceedings plaintiffs have maintained that there was no problem with the hydrant but, rather, the damage was caused by an underground water pipe which broke.

This case then boils down to one issue—is the pipe that carries water from a water main to a fire hydrant "firefighting equipment or facilities"? The circuit court found that it was, we find that it is not.

■ When interpreting section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)), our primary goal is to ascertain and give effect to the intention of the legislature. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 665 N.E.2d 808 (1996). We look primarily at the language used in the Tort Immunity Act to determine legislative intent. *Barnett*, 171 Ill. 2d at 388. The plain language of section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) is clear—it immunizes the city for injuries resulting from the condition of "firefighting equipment or facilities." The terms "firefighting equipment" and "facilities" are not defined in the statute and therefore must be given their ordinary and popularly understood meanings. *Niven v. Siqueira*, 109 Ill. 2d 357, 487 N.E.2d 937 (1985); *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 623 N.E.2d 246 (1993).

■ We reject defendant's contention that the separate hydrant lead is a "facility." The term "facilities" has been defined as referring to city fire "[d]epartment structures and their locations." *Harinek v. City of Chicago*, 283 Ill. App. 3d 491, 495, 670 N.E.2d 869 (1996), *aff'd in part & rev'd in part sub nom. Harinek v. 161 North Clark Street, Ltd. Partnership*, 181 Ill. 2d 335 (1998). Clearly, a separate water pipe attached to a fire hydrant does not fall within this definition.

Furthermore, the hydrant lead does not fall within the ordinary and popularly understood meaning of "firefighting equipment." A hydrant itself would certainly be considered "firefighting equipment." However, this case does not deal with a hydrant but, rather, with a separate water pipe. The pipe is not part of the hydrant but, rather, is a component part of the city's underground water system. The supreme court decision in *City of Chicago v. Selz, Schwab & Co.*, 202 Ill. 545, 67 N.E. 386 (1903), although decided before the enactment of the Tort Immunity Act, is instructive on this point. In a factually identical case, our supreme court referred to the six-inch-diameter pipe connecting the fire hydrant to the water main as a part of the city's waterworks system. *Selz*, 202 Ill. at 546.

The fact that the pipe supplies water to the hydrant does not make it "firefighting equipment." The defendant argues that because the hydrant lead was a dedicated pipe whose sole purpose was to carry water to the hydrant, the hydrant lead is firefighting equipment. However, a study of the present situation illuminates the flaw in defendant's logic. The hydrant in question was removed and the hydrant lead pipe was plugged. The hydrant lead is still a dedicated

pipe, although not presently in use. If there was a problem with the hydrant lead today without the hydrant attached, there would be no question that the hydrant lead was not firefighting equipment. A pipe is a pipe and the sole function of a pipe is to carry water. The particular end use of that water does not miraculously transform the pipe into "firefighting equipment."

Under the plain language of section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)), the immunity must stop at the hydrant. To extend the immunity beyond the hydrant to the separate hydrant lead would be a departure from the plain language of the Tort Immunity Act. Our supreme court has made it clear that we must not depart from the plain language of the Tort Immunity Act by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 680 N.E.2d 265 (1997); *Barnett v. Zion Park District*, 171 Ill. 2d 378, 665 N.E.2d 808 (1996). Furthermore, extending the scope of immunity beyond the hydrant to the pipe that supplies water to the hydrant would in essence immunize the water department from any responsibility for its negligence in the care and maintenance of the entire underground water system, as all component parts of the system provide water to some extent, for use in firefighting.

The defendant makes several arguments which beg the central question. We agree that section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)) cannot be read to contain an exception for "firefighting equipment or facilities" that are maintained by a municipal water provider. However, this does not change the fact that the hydrant lead, regardless of who maintains it, is not "firefighting equipment or facilities." Similarly, whether section 5—103(a) is or is not limited to injuries resulting from fires or fire suppression does not change the fact that the hydrant lead is not "firefighting equipment or facilities."

We find that the hydrant lead is not "firefighting equipment or facilities" within the meaning of section 5—103(a) of the Tort Immunity Act (745 ILCS 10/5—103(a) (West 1994)). Therefore, the city is not immune from liability in this case and the circuit court erred in dismissing plaintiffs' complaints.

In light of the above analysis, we find it unnecessary to address plaintiffs' argument regarding codification of the "no duty" rule.

Accordingly, for the reasons set forth above, we reverse the judge-

ment of the circuit court of Cook County and remand for further proceedings.

Reversed and remanded.

CERDA, P.J., and SOUTH, J., concur.