In the

# United States Court of Appeals

### For the Seventh Circuit

No. 06-4206

REMET CORPORATION and U.S. FIRE INSURANCE COMPANY,
as subrogee of Remet Corporation,

*Plaintiffs-Appellants,*

*v.*

CITY OF CHICAGO, an Illinois municipal corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 5571—**Milton I. Shadur**, *Judge.*

ARGUED OCTOBER 22, 2007—DECIDED DECEMBER 4, 2007

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* In this negligence case, the plaintiffs, Remet Corporation and United States Fire Insurance Company, its subrogee (we will refer to both as "Remet"), allege that a fire destroyed Remet's manufacturing facility because the defendant, the City of Chicago, interrupted water service to the building's fire sprinklers and nearest fire hydrants and failed to restore service before the fire. The City maintains that, even if these allegations are true, Remet's claim is barred by the Local Governmental and Governmental Employees Tort

Immunity Act, 745 Ill. Comp. Stat. 10/1-101 *et seq.* Alternatively, the City contends that it owes Remet no duty under Illinois common law to prevent its injury.[1] According to Remet, immunity does not apply, and a duty does indeed exist.

District Judge Milton Shadur sided with the City when it moved to dismiss the complaint for failing to state a cause of action under Federal Rule of Civil Procedure 12(b)(6). We review the dismissal order *de novo*, accepting all well-pled factual allegations as true and construing all reasonable inferences in favor of Remet on its appeal of that decision.[2] *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). Judge Shadur's decision was based on the Tort Immunity Act, but we may affirm his judgment on any ground supported by the record. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

Remet's complaint alleged the following facts. Sometime prior to the day of the fire, the City shut off the water to the block on which Remet's manufacturing facility was located in order to work on the nearby water main. The City did not, however, advise Remet or the Chicago Fire Department of its actions or, more importantly, turn the water back on after it completed its work. On October 18, 2005, the second floor of Remet's facility caught fire. This caused the building's sprinkler

---

[1] The parties do not dispute that the substantive law of Illinois applies in this diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[2] This does not mean, as Remet argues in its brief, that we accept as true its allegation that the City owed it a cognizable duty. That is a question of law, not fact. Inserting the words "had a duty" into a complaint—if no duty actually exists—does not defeat a motion to dismiss.

system, which was connected to the City's water supply, to activate, but no water was discharged. The City was able to reestablish water service to the sprinklers sometime during the fire.

The Chicago Fire Department responded to the fire with two fire engines. The firefighters connected each of the engines' hoses to the two closest fire hydrants, but both were dry. The firefighters then disconnected the hoses and relocated the engines to use two different hydrants, which were farther away from the building. Despite these efforts, the fire spread throughout the building and eventually consumed it. As of the date of the complaint, Remet has been paid $7 million under its insurance policy for the fire loss. Remet expects that insurance will not fully compensate it for its injuries.

A year after the fire, Remet filed this suit in the Northern District of Illinois, alleging (among other things) that the City breached its duty to exercise reasonable care in the control, repair, and maintenance of the underground water lines that supplied the fire sprinklers and hydrants. Remet claimed that, due to the City's errors and omissions, the sprinklers were unable to discharge any water until service was reestablished later, and the fire department was significantly delayed in its efforts to suppress the fire during its critical early stages. As a result, the fire spread and caused a total loss of Remet's building and its contents.

There are two issues on appeal, which must be analyzed separately: (1) whether the City is immune from liability and (2) whether the City owes Remet a duty in tort. Finding for the City on either issue is sufficient for us to affirm the dismissal of Remet's complaint. *See DeSmet ex rel. Estate of Hayes v. County of Rock Island*, 848 N.E.2d 1030, 1036 (Ill. 2006). Courts often treat the duty question first, only looking to immunity after a duty and

breach are found. *See*, *e.g.*, *Ware v. City of Chicago*, 873 N.E.2d 944, 948 (Ill. App. Ct. 2007). However, because the district court relied upon immunity, we begin our analysis there, assuming *arguendo* that the City owes Remet a legally cognizable duty.

Illinois's Tort Immunity Act, which replaced the previously abolished doctrine of sovereign immunity, "protect[s] local public entities and public employees from liability arising from the operation of government." 745 Ill. Comp. Stat. 10/1-101.1(a).[3] By providing immunity and defenses, the legislature sought to ensure that public funds were not dissipated by paying private damage claims. *DeSmet*, 848 N.E.2d at 1036. Section 5-102 of the Act states that "[n]either a local public entity that has undertaken to provide fire protection service nor any of its employees is liable for an injury resulting from the failure to suppress or contain a fire or from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities."

Here, the City established a fire department, qualifying it as "a local public entity that has undertaken to provide fire protection service." In addition, Remet alleged that the fire spread and ultimately consumed its building because the City failed to (1) notify Remet and the fire department that water service had been interrupted and (2) provide uninterrupted service to the hydrants and sprinklers. This is just another way of saying that Remet's "injury result[ed] from the failure to suppress or contain a fire." Thus, the facts fall squarely within the plain language of § 5-102.

Illinois case law provides further support for immunity under § 5-102. In *Jones v. Village of Willow Springs*, 608

---

[3] All statutes cited in the following discussion refer to 745 Ill. Comp. Stat. 10.

N.E.2d 298 (Ill. App. Ct. 1992), the Illinois appellate court affirmed a dismissal under §§ 5-102 and 5-103 where the plaintiffs claimed that a village's failure to maintain adequate water pressure in its water mains resulted in fire damage. Similarly, in *Pierce v. Village of Divernon, Ill.*, 17 F.3d 1074 (7th Cir. 1994), we held that a village was clearly protected by the Tort Immunity Act where the plaintiffs alleged that it failed to provide an adequate water supply and pressure to fight a fire. There, we rejected the plaintiffs' allegation that the village interfered with the fire department's attempts to control the blaze as "simply another way of saying that the Village either failed to provide fire protection under [§ 5-101] or failed to provide sufficient 'facilities' to suppress or contain the fire under [§ 5-102]." *Id.* at 1077-78. Here, the crux of the complaint is that the City's negligence prevented a supply of water that could have suppressed the fire from reaching the hydrants and sprinklers. Therefore, *Jones* and *Pierce* are directly on point.

Instead of admitting defeat under *Jones* and *Pierce*, Remet strenuously argues that they are distinguishable and that another case, *Independent Trust Corp. v. City of Chicago Department of Water*, 693 N.E.2d 459 (Ill. App. Ct. 1998), controls. In *Independent Trust*, the plaintiffs sued the city for flood damage caused by a leaky underground pipe, alleging that the city had negligently maintained, inspected, or repaired the pipe. Because the leaky pipe was dedicated to supplying water from the city's water main to a fire hydrant, the city argued that it was immune under § 5-103 (not § 5-102) of the Tort Immunity Act, which exempts liability for injuries "resulting from the condition of fire protection or firefighting equipment or facilities." *Id.* at 461. The appellate court rejected this argument and held that a pipe, unlike a hydrant, was not "firefighting equipment or facilities" within the meaning of § 5-103. *Id.* at 463.

Remet argues that because the City's conduct here also involved an underground water pipe, *Independent Trust* is binding precedent. We disagree. *Independent Trust* was about water damage from a leaky pipe. It did not involve a fire. That is why the city argued for immunity under § 5-103, which deals with the condition of firefighting equipment. By contrast, in our case, Remet can only bring a claim because a fire consumed its facility. The conduct in question involves the failure to suppress a fire, which only would have been possible through the City's established water service. Thus, unlike in *Independent Trust*, § 5-102 is directly implicated here. Because the fact situations and immunity provisions do not correspond, applying *Independent Trust* to this case would be inappropriate.[4]

Notably, at oral argument, Remet's counsel conceded that, had there been inadequate water (as opposed to *no* water) to fight the fire at its facility, the City would be immune under *Jones* and *Pierce*. We fail to recognize any material difference between that hypothetical and our set of facts. Rather, we cannot understand how this case falls under the umbrella of *Independent Trust*. Such a finding would require us to ignore the nature of the injury (fire damage) and the context of that injury (a fire) and instead focus solely on the City's conduct (failing to turn the water back on). That would be like a referee

---

[4] *C.D.L., Inc. v. East Dundee Fire Protection District*, 624 N.E.2d 5 (Ill. App. Ct. 1993), is also inapposite. In *C.D.L.*, the injury resulted from the allegedly negligent maintenance of a fire engine's brakes and did not involve fire suppression. *Id.* at 7. Consequently, as in *Independent Trust*, the court only considered § 5-103. *Id.* at 11. Furthermore, § 5-103 specifically excludes from immunity claims based on "negligence by reason of the condition of a motor vehicle while it is traveling on public ways," which is not at issue here.

ignoring the fact that time already expired and that the receiver dropped the pass, and still awarding a touchdown because the quarterback threw the ball into the end zone. Obviously, the context and the nature of the injury matter, which is why *Independent Trust* is distinguishable, the City has immunity under § 5-102, and Judge Shadur properly dismissed the complaint.

We have assumed thus far that the City owes Remet a legally cognizable duty. Because we concluded that the City is immune from liability, we need not resolve the duty question. However, we say a word about Remet's likelihood of success on that issue.

Under Illinois common law, a municipality is not liable for the failure to provide governmental services, such as police or fire protection. *Huey v. Town of Cicero*, 243 N.E.2d 214, 216 (Ill. 1968). The policy supporting this "public duty" (or "no duty") rule is that the government's duty to preserve the community's well-being is owed to the public at large, rather than to specific individuals. *Zimmerman v. Village of Skokie*, 697 N.E.2d 699, 702 (Ill. 1998). Indeed, if a municipality were required to meet every allegation of negligence, enormous public resources would be diverted from the provision of governmental services to the defense of litigation and payment of judgments. Such a situation "would virtually render the city an insurer of every person's property within the limits of its jurisdiction" and would threaten—rather than promote—continuation of such services. *Wilcox v. City of Chicago*, 107 Ill. 334, 1883 WL 10307 at *4 (Ill. 1883).

It is unsurprising, then, that no Illinois court has found that a governmental entity has a duty to provide uninterrupted water service for firefighting purposes, which is essentially Remet's claim. And, to the extent that they have considered related claims for fire damage arising

out of an insufficient water supply, Illinois courts have found that no such duty exists. *See, e.g.*, *Consolidated Biscuit Co. v. Illinois Iowa Power Co.*, 24 N.E.2d 582, 584-85 (Ill. App. Ct. 1939); *Miralago Corp. v. Village of Kenilworth*, 7 N.E.2d 602, 607 (Ill. App. Ct. 1937). Thus, even apart from statutory immunity, Illinois common law indicates that the City owes no cognizable duty to Remet in this case.

For these reasons, the judgment of the district court is AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*